IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CONSTANCE WRIGHT BENSON, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | NO. 2:19-cv-00409-SRW |
| | ) | |
| KILOLO KIJAKAZI,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

## I.      INTRODUCTION

Plaintiff Constance Wright Benson commenced this action on June 12, 2019, pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), seeking judicial review of a final adverse decision of the Commissioner of Social Security ("the Commissioner") denying her applications for a period of benefits, social security disability ("SSD"), and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("the Act"). *See* Doc. 1. Plaintiff filed her applications on June 2, 2015, initially alleging that she became disabled on September 17, 2011, but later amended the onset date of disability to August 30, 2013. (Tr. 11, 168, 231, 234).[2] Plaintiff's applications were denied at the initial administrative level. (Tr. 11, 231, 234, 246). Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 11, 162, 255, 258). On March 22, 2018, the ALJ issued an unfavorable decision. (Tr. 8-25).

---

[1] Kilolo Kijakazi became acting Commissioner for the Social Security Administration on July 9, 2021, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] References to the transcript pages are denoted by the abbreviation "Tr."

Plaintiff appealed that decision, and the Appeals Council denied Plaintiff's request for review on April 8, 2019. (Tr. 1-4). The ALJ's decision therefore became the final decision of the Commissioner. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

In the instant appeal, Plaintiff asks the court to reverse the Commissioner's decision and remand this cause to the Commissioner for a new hearing and further consideration under sentence four of 42 U.S.C. § 405(g). *See* Docs. 1, at 2; 8, at 12. The case is ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. See Docs. 13, 14. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court concludes that the Commissioner's decision is due to be AFFIRMED.

## II.   STANDARD OF REVIEW AND REGULATORY FRAMEWORK

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court

may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987) (citations omitted and bracketed material added).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

> (1) Is the person presently unemployed?
>
> (2) Is the person's impairment severe?
>
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
>
> (4) Is the person unable to perform his or her former occupation?
>
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through step four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from step one through step four. At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was 45 years old at the time she filed her applications for benefits and 48 years old at the time of the ALJ's decision. (Tr. 24, 209, 231, 234). Plaintiff is a resident of Montgomery, Alabama, and lives in a house with her son. (Tr. 169, 396). Plaintiff graduated from high school. (Tr. 19, 169, 378).

Plaintiff claims that her ability to work is limited by lower back pain and hip bursitis; residuals of surgery on her neck; headaches; head shakes caused by pain; a bulging disc in her lumbar spine; and a need for pain injections to control pain. (Tr. 17, 377). Plaintiff previously worked as a car parts inspector and is currently running a cleaning/housekeeping business. (Tr. 16, 23, 169, 177-78, 378-79).

Following the administrative hearing, where Plaintiff and a vocational expert testified, and employing the five-step process, the ALJ made the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.  The claimant has not engaged in substantial gainful activity since September 17, 2011, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: cervical and lumbar degenerative disc disease and left shoulder degenerative joint disease (20 CFR 404.1520(c) and 416.920(C)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no kneeling, crouching or crawling; no climbing ladders or exposure to hazards; no overhead reaching; no pushing/pulling with the upper or lower extremities; she is limited to simple, routine tasks.

5

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on January 28, 1970 and was 41 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 17, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 15, 17, 18, 23, 24, 25).

## IV.     ISSUE ON APPEAL

Plaintiff raises one issue on appeal, arguing that the Commissioner's decision is not supported by substantial evidence because the Appeals Council failed to consider new and material evidence pertaining to the period of disability, which warranted a remand. (Doc. 8, at 2, 11-12). The Commissioner maintains that the Appeals Council properly declined review and that the Commissioner's decision is supported by substantial evidence. (Doc. 10, at 1, 6, 8-9).

## V.     DISCUSSION

Plaintiff argues that this case should be remanded because the Appeals Council improperly declined to review Plaintiff's case based on additional evidence that Plaintiff submitted after the

ALJ's decision—specifically, medical treatment occurring prior to the ALJ's March 22, 2018 decision, including: (1) Southern Pain Control Center (records dated September 27, 2017 to January 19, 2018); (2) Neurological Care Center of Montgomery PC (records dated October 6, 2016 to October 20, 2016); and (3) Geriatric Associates of Montgomery PC (records dated March 16, 2015 to March 1, 2018); and medical treatment occurring after the ALJ's March 22, 2018 decision, including: (4) Montgomery Neurosurgical Associates (records dated May 18, 2018 September 10, 2018); (5) Neurosurgery & Spine Associates of Central Alabama PC (records dated May 18, 2018 to June 11, 2018); (6) Southern Orthopaedic Surgeons LLC (records dated September 18, 2018 to October 9, 2018); and (7) Geriatric Associates of Montgomery PC (records dated April 12, 2018). (Tr. 2; Doc. 8, at 3-4).

The court "must consider evidence not submitted to the administrative law judge but considered by the Appeals Council when that court reviews the Commissioner's final decision denying Social Security benefits." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1258 (11th Cir. 2007). Evidence is properly presented if the evidence is "new and material," and it "relates to the period on or before the date of the hearing decision." *See* 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5);[5] *Russell v. Astrue*, 742 F. Supp. 1355, 1382 (N.D. Ga. 2010) (citing *Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 800-02 (11th Cir. 2008)). The Appeals Council must review a case if properly presented new evidence shows that "there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a). However, if the Appeals Council denies a request for review, it is "not required to provide a detailed discussion of the new evidence or an explanation as to why the claimant's new evidence

---

[5] The agency revised 20 C.F.R. §§ 404.970 and 416.1470 in December 2016, effective January 17, 2017, with compliance required as of May 1, 2017. *See* "Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process," 81 FR 90987-01, 90987, 2016 WL 7242991.

would not change the ALJ's decision." *Douglas v. Comm'r of Soc. Sec.*, 764 F. App'x 862, 863 (11th Cir. 2019) (citing *Mitchell v. Comm'r of Soc. Sec. Admin.*, 771, F.3d 780, 784-85 (11th Cir. 2014)). "[W]hen a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

The ALJ thoroughly considered the whole record in finding that Plaintiff was not disabled. At the hearing, Plaintiff admitted that she had been running a cleaning business in which she and her brother cleaned a medical building. (Tr. 16). The ALJ found "meaningful" that Plaintiff "was holding herself out to her friends and then future clients as a nondisabled person capable of carrying out work orders." (Tr. 16). The ALJ determined that "it is not unreasonable to conclude that the process of researching the business to prepare for the [contract] bid, registering as a corporation, and then preparing and submitting the bid is not negligible activity." (Tr. 16). The vocational expert established that the house cleaning job qualified as light work. Based upon that testimony, the ALJ concluded that plaintiff's impairments therefore would not prevent her from doing a full day's work at the sedentary level. (Tr. 18, 19). The ALJ also concluded that Plaintiff's ability to work was inconsistent with her claims that she needed help performing daily and other activities. (Tr. 23).

The ALJ discussed the medical record extensively in determining whether Plaintiff was disabled under the Social Security regulations. The ALJ noted that records showed that injections provided Plaintiff longer pain relief than she admitted and that she was on Norco[6] for the pain, which helped with the pain and sleep. (Tr. 19-20). The ALJ stated that although Plaintiff complained of migraines she did not have a migraine diagnosis. (Tr. 20). The ALJ also noted that

---

[6] Norco contains a combination of acetaminophen and hydrocodone. Dorland's Illustrated Medical Dictionary 1290 (32nd ed. 2012).

the medical evidence confirmed that Plaintiff had degenerative disc disease of the cervical and lumbar spine. (Tr. 20). The ALJ cited a 2010 lumbar MRI that showed bulging with encroachment upon a nerve root. (Tr. 20, 579). The examining doctor said there was no lumbar tenderness in or off midline, the back was normal on inspection and palpation, and there was no evidence of spasm. (Tr. 21, 579, 584). There was joint tenderness at the sacroiliac junction, which was described as only mild. (Tr. 21, 57, 584). Hip imaging was normal on MRI. (Tr. 21, 588). An MRI in March 2013 showed a left-sided disc herniation with spur formation at C6-7. (Tr. 21, 646). Plaintiff underwent surgery on her neck, a C6-7 discectomy and fusion, on March 28, 2013; she also had an MRI of her back, which showed degenerative changes at L4-5 and L5-S1, but her gait was normal and there were no clinical signs showing that her back was abnormal. (Tr. 21, 688, 751, 759). The ALJ noted that the evidence shows that after the neck surgery Plaintiff received some pain management treatment in the later part of 2013 and early 2014, but does not show worsening changes. (Tr. 21).

The ALJ also noted that Plaintiff was not in the obese range at any point during the relevant period, there was no worsening attributable to weight changes, and that she had been basically complaining of the same character and frequency of back pain since 2010. (Tr. 21). Plaintiff did well with injections, reporting in May 2014 that she got 80 percent relief for two weeks from the injection that she received in January 2014. (Tr. 21, 771). The ALJ further noted the following:

> The claimant then appears to have had a lapse in treatment until March 2015, ten months later, when she sought treatment again for neck and back complaints. She underwent an MRI of her lumbar spine, which still showed degenerative disc disease. There was now moderate L4-5 right disc protrusion approaching the exiting L4 nerve root, which is similar to what was seen in 2010. She continued to have mild degenerative changes at the L2-3, L3-4 and L5-S1 levels that were stable since the previous MRI from 2013. The claimant also underwent MRI of the cervical spine, which showed the prior C6-7 anterior fusion as well as chronic C5-6 left lateral recess disc protrusion, but not significantly changed from an MRI done in October 2013. She had mild increase of C4-5 bony foraminal stenosis since 2013. She underwent an additional lumbar injection in March 2015 that provided 20 to 30 percent relief for a couple of days, but she mainly complained of neck pain, and

9

her doctor did a cervical epidural injection.

(Tr. 21-22, 683-84, 773, 775).

As for shoulder pain, the ALJ noted that although treatment had been minimal, Plaintiff had an MRI of the shoulder in May 2014, which showed AC arthrosis without impingement; some impingement at the supraspinatus tendon with distal intrasubstance tear; and no evidence of full thickness tear of the rotator cuff. (Tr. 22, 695). Dr. Hartzog, an orthopedist, recommended simple measures for treatment, stating that Plaintiff was not ready for surgical intervention and that she should return for possible injections in three to four weeks after she had completed her injections for her spine. (Tr. 22, 692). The ALJ noted that Dr. Hartzog recommended that she start a home therapy program using "bands," meaning that he thought she had the capacity for pushing and pulling but that she should strive to build up those facilities. (Tr. 22, 692). The ALJ also noted that Plaintiff apparently did not ever return for treatment for her shoulder, which suggested improvement. (Tr. 22, 692). The ALJ found it significant that testing of Plaintiff's upper extremities in May 2014—secondary to her complaints of severe neck pain; left shoulder pain radiating to the hand; and numbness, tingling, muscle weakness, and burning in the left arm and left hand—showed normal results. (Tr. 22).

The ALJ also concluded that Plaintiff's daily activities showed that she prepared simple meals for herself, that she drove, and that she shopped with her daughter. (Tr. 22, 396-99). The ALJ noted that there were no medical facts and clinical findings documenting any impairment or related symptoms that supported any persistent functional limitations as alleged by Plaintiff. (Tr. 22).

As for opinion evidence, the ALJ gave partial weight to the State agency medical consultant opinion from Dr. Heilpern, who limited Plaintiff to medium work with no climbing ladders, ropes or scaffolds; frequently climbing ramps and stairs, balancing, stooping, kneeling, crouching, and

crawling; and no exposure to unprotected heights. (Tr. 17, 23, 209-18). However, the ALJ gave Plaintiff some credit for her subjective complaints. (Tr. 23). In summary, the ALJ concluded that Plaintiff's RFC was "supported by the mild to moderate findings on radiology reports, her good response to medications (per testimony) and epidural injections (per treatment notes), and her own report of her daily activities as well as her current employment working as a medical building cleaner." (Tr. 23).

Plaintiff submitted to the Appeals Council additional medical evidence from multiple medical sources pertaining to medical treatment that occurred during the period of disability prior to the ALJ's decision, as well as medical evidence of treatment occurring after the ALJ's decision. (Tr. 2, 73-140). Plaintiff submitted medical records involving medical treatment received prior to the ALJ's March 22, 2018 decision from Southern Pain Control Center (records dated September 27, 2017 to January 19, 2018); Neurological Care Center of Montgomery PC (records dated October 6, 2016 to October 20, 2016); and Geriatric Associates of Montgomery PC (records dated March 16, 2015 to March 1, 2018). (Tr. 2). The records from the Southern Pain Control Center, dated September 27, 2017 to January 19, 2018, reflect that on September 27, 2017, a musculoskeletal examination noted straight-leg raising 60 degrees on the left and 80 degrees on the right, limited range of motion in back flexion and extension, limited lower extremity forward flexion range of motion, and palpable trigger points. (Tr. 102-03). Spine examination noted cervical and lumbar abnormal range of motion, facet tenderness at C5-6, 6-7, L4-5, L5-S1, and positive S1 compression test bilaterally. (Tr. 103). Impressions were listed as chronic severe intractable neck and back pain; cervical and lumbar facet syndrome; cervical and lumbar radiculitis[7] with degenerative disc disease and muscle spasms; bilateral S1 joint dysfunction-SC

---

[7] Radiculitis involves "inflammation of the root of a spinal nerve, especially of that portion of the root which lies between the spinal cord and the intervertebral canal." *Dorland's* at 1571.

neuralgia[8]; and cervical & lumbar stenosis. (Tr. 103). Diagnoses were lumbosacral spondylosis[9] without myelopathy; spinal and lumbar stenosis; and degeneration of lumbar or lumbosacral intervertebral disc. (Tr. I03-04). Recommendations included injections and transforaminal epidurals, and prescriptions included hydrocodone-acetaminophen. (Tr. 104).

On December 8, 2017, a spine examination reflected restricted lumbar spine range of motion and midline tenderness at L4-5, L5-Sl. (Tr. 98). Muscle spasms were noted, and Plaintiff had straight-leg-raise of 50 on the left and 80 on the right. (Tr. 99). Impressions included lumbar spinal stenosis; lumbar radiculopathy with degenerative disc disease; foraminal narrowing; exacerbation of back pain; that patient had made some temporary progress with the treatment given, although the pain was persistent; and that patient had undergone home exercise program. (Tr. 99). On January 19, 2018, Plaintiff reported that the Racz procedure, which was performed to remove excessive scarring in the epidural space, was helpful, but the pain returned after one week at work. (Tr. 94, 99). Recommendations included discussion of activity limitations and neurosurgical consultation. (Tr. 96).

Records from Neurological Care Center of Montgomery, PC, show that on October 6, 2016, Plaintiff complained of neck and back pain, dizziness, and near fainting associated with the neck pain. (Tr. 107). Impressions included cervicalgia (neck pain), paresthesia (a burning or prickling sensation), migraines, dizziness associated with headaches, and chronic neck pain. (Tr. 109). On October 17, 2016, Plaintiff returned complaining of numbness, tingling and pain down her left arm, and sometimes radiating to the top of both shoulders, as well as continuing neck and back pain. (Tr. 112).

---

[8] Neuralgia pertains to "pain extending along the courts of one or more nerves." *Dorland's* at 1262.

[9] Spondylosis is ankylosis (the immobility and consolidation of a joint due to disease, injury, or surgical procedure) of a vertebral joint or degenerative spinal changes due to osteoarthritis. *Dorland's* at 94, 1754.

March 1, 2018 records from Geriatric Associates of Montgomery restate Plaintiff's reported medical history of neck and back pain. (Tr. 77). The musculoskeletal examination showed a decrease in range of motion in the cervical and lumbar spine. (Tr. 80). For pain, Plaintiff was to use "icyhot wrap" and was prescribed Cymbalta 30mg.[10] (Tr. 81). The provider discussed with Plaintiff diet and exercising 30 minutes per day. (Tr. 81).

The administrative record makes clear that the Appeals Council accepted the additional medical evidence accruing prior to the ALJ's March 22, 2018 decision that was submitted by Plaintiff, but found that this additional evidence did not present a reasonable probability of changing the outcome of the ALJ's decision. (Tr. 2). The court agrees. Plaintiff fails to show that this additional evidence, considered with the record as a whole, would change the outcome of the ALJ's decision. The ALJ thoroughly discussed the record in concluding that Plaintiff was not disabled. "[T]he ALJ does not need to discuss every piece of evidence in the record." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 775 n.9 (11th Cir. 2019) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision.")).

In addition to the medical records, the ALJ found it significant that Plaintiff operated a cleaning business during the relevant period of alleged disability. Although the ALJ determined that Plaintiff's cleaning business did not constitute substantial gainful activity, the Commissioner may consider a claimant's work activity in evaluating a plaintiff's claims and in fashioning the plaintiff's RFC. *See* 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."); *Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 808 (11th Cir. 2013); *Harris v. Barnhart*, 356

_____

[10]   Cymbalta is antidepressant medication. https://www.webmd.com/drugs/2/drug-91491/cymbalta-oral/details (last viewed August 17, 2021).

F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that [plaintiff's] daily activities, including part-time work, cleaning house, attending church, and dining out with her boyfriend, were inconsistent with her claim of disabling pain."); *see Miller v. Comm'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013) ("Further, the ALJ did not err by considering [the plaintiff's] ability to maintain part-time employment as one factor relevant to the determination of whether he was disabled.").

Plaintiff fails to argue with any specificity how this additional evidence would change the outcome of the ALJ's decision. Plaintiff argues generally that the new evidence "pertains directly to the nature and severity of [her] lower back and neck impairments, and by extension, to her allegations of symptoms and limitations resulting from her impairments," and that the "records of treatment indicate consistent, clear diagnoses of lower back and neck impairments that provide substantial support to [her] alleged limitation of function and disability resulting from the impairments." (Doc. 8, at 11). Plaintiff further argues that "[i]f the new evidence had been available and considered by the ALJ at the time of the Decision, it could reasonably have resulted in greater exertional and non-exertional limitations in the RFC findings of the ALJ, or possibly a finding that the claimant's impairments met or equaled the listings considered at 1.01 and 11.01, and thus could reasonably have resulted in the ALJ determining that Plaintiff was disabled, thereby resulting in a different outcome in the ALJ Decision." *Id*. at 12.

"The claimant bears the burden of proving that she is disabled, and, thus, is responsible for producing evidence to support her claim." *Cooper*, 521 F. App'x at 808 (citing *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir.2003)). The additional evidence submitted is cumulative of the evidence before the ALJ, and none of it undercuts the substantial evidence supporting the ALJ's decision. Nor did Plaintiff submit a doctor's opinion that contradicted or undermined the ALJ's findings. "To the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is

not a ground for remand." *Horne v. Comm'r of Soc. Sec.*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3023679, at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181-JLB-MRM, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Lanier v. Colvin*, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) ("The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.") (citing *Crawford*, 363 F.3d at 1158-59).

For the same reasons, Plaintiff's submission to the Appeals Council of additional medical evidence of treatment occurring after the ALJ's decision is unavailing. (Tr. 2, 73-140). Plaintiff submitted medical records involving medical treatment received after the ALJ's March 22, 2018 decision from Montgomery Neurosurgical Associates (records dated May 18, 2018 September 10, 2018); Neurosurgery & Spine Associates of Central Alabama PC (records dated May 18, 2018 to June 11, 2018); Southern Orthopaedic Surgeons LLC (records dated September 18, 2018 to October 9, 2018); and Geriatric Associates of Montgomery PC (records dated April 12, 2018). (Tr. 2). Plaintiff was seen at Southern Orthopaedic Surgeons LLC for left knee pain. (Tr. 140-45).

Geriatric Associates records from April 12, 2018 reveal that Plaintiff returned with complaints of neck, back, arm, and leg pain. (Tr. 73). Plaintiff was prescribed Lyrica 75mg,[11] Cymbalta 60mg, and Percocet 7.5mg. (Tr. 76). Plaintiff's musculoskeletal examination showed the following: cervical spine range of motion decreased, range of motion upper extremity normal, shoulder crepitus present, lumbar spine range of motion decreased, and range of motion lower extremity normal. (Tr. 75). The neurological findings were CN II-XII intact; upper extremity strength 5/5; lower extremity strength 5/5; light touch sensation decreased; dull/sharp sensation

---

[11] Lyrica is used to treat nerve pain. https://www.webmd.com/drugs/2/drug-93965/lyrica-oral/details (last viewed July 29, 2021).

decreased; gait: antalgic right, moderate step-height. (Tr. 75).

Records from Montgomery Neurosurgical Associates reflect that on August 22, 2018, Plaintiff presented with complaints of neck and shoulder pain; neck and arm pain; hip pain; low back and buttock pain; low back and leg pain; headaches; and dizziness and/or lightheadedness. (Tr. 126). The musculoskeletal lumbar examination indicated tenderness to palpation at multilevel and left paraspinous region L5-Sl and L4-L5; no lumbar paraspinous muscle spasm; and straight leg raise on both legs produced back pain only, increased pain with active range of motion, and left sacroiliac joint was tender to palpation. (Tr. 128-29). Cervical spine examination indicated mild cervical paraspinous muscle spasm and tenderness to palpation, diffusely throughout the cervical spine. (Tr. 129). Plaintiff had increased pain with active range of motion, with rotation to the right and the left, and with flexion and extension. (Tr. 129). A May 18, 2018 cervical MRI reflected findings consistent with herniated nucleus pulposus at C5-6 (left). (Tr. 130). On September 10, 2018, the treating physician, Dr. Ryan, concurred with the radiologist report. (Tr. 122). The impression of the August 28, 2018 lumbar MRI was stable chronic L4-5 right disc protrusion; mild worsening L5-S1 bony foraminal stenoses; and no other significant interval change. (Tr. 136-137).

The diagnoses of lumbar radiculitis, pain lumbar, brachial neuritis or radiculitis NOS and pain in unspecified knee were indicated by Dr. Ryan. (Tr. 122, 132). Treatment options included continuing current care, injections, medications, and physical therapy. Dr. Ryan noted that surgery (anterior cervical discectomy and fusion at C5-6) was also discussed as an option. (Tr. 122, 132).

Records from Neurosurgery & Spine Associates of Central Alabama reveal that on June 11, 2018, Plaintiff's range of motion was noted as decreased in the cervical, thoracic and lumbar spine, and in the hips. (Tr. 86). A review of an August 16, 2017 MRI of the lumbar spine showed "disc protrusion at L4-5 causing moderate compression of the exiting L4 nerve root on the right,"

and a review of a May 18, 2018 MRI of the cervical spine showed a protrusion at C5-C6, among other findings. (Tr. 87). The assessment included cervicalgia (primary); low back pain; other cervical disc degeneration, unspecified cervical region; other intervertebral disc degeneration, lumbar region; other spondylosis with radiculopathy, cervical region; other spondylosis with radiculopathy, lumbosacral region; and other cervical disc displacement, unspecified cervical region. (Tr. 87). Plaintiff was given the option of pain management or surgery. (Tr. 87).

The Appeals Council determined that this evidence of medical treatment, which occurred following the ALJ's decision, did not relate to the disability period at issue and therefore did not affect the ALJ's decision about whether Plaintiff was disabled beginning on or before the ALJ's March 22, 2018 decision. (Tr. 2). The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Here, this additional evidence is not chronologically relevant as it does not relate back to the period before the ALJ's decision, and does not contain any medical opinions based on Plaintiff's medical records from the time period prior to the ALJ's decision. *See Griffin v. Comm'r of Soc. Sec.*, 723 F. App'x 855, 858 (11th Cir. 2018) ("This Court has recognized that in specific circumstances, 'medical opinions based on treatment occurring after the date of the ALJ's decision may be chronologically relevant. . . .' While evidence of deterioration of a previously considered condition may subsequently entitle a claimant to benefit from a new application, it is not probative of whether the claimant was disabled during the relevant time period under review.") (citation omitted).

In any event, this additional evidence is not material for the reasons previously discussed, as it is cumulative and does not contain medical records or opinions contradicting or undermining the ALJ's decision, and there is not a reasonable possibility that it would change the outcome of

the Commissioner's decision.

Accordingly, the court finds that the Commissioner's decision is supported by substantial evidence.

## VI.     CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is due to be AFFIRMED.  A separate judgment will issue.

DONE, on this the 19th day of August, 2021.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge